## **AFFIDAVIT**

I, Joseph Steele, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been employed by ATF for twelve years. Before joining ATF, I worked as a police officer with the Bellingham, Massachusetts, police department. I am presently assigned to ATF's Boston office, where my primary duty is to investigate possible violations of federal firearms laws in Massachusetts, including the city of Boston.

2. Based on my training and experience, I am familiar with federal firearms laws and know that it is a violation of Title 18, United States Code, Section 922(g)(1) for a felon to possess ammunition which had previously traveled in interstate commerce.

3. I submit this affidavit in support of a criminal complaint charging DEMETRIUS WILLIAMS with being a felon in possession of ammunition. I did not personally participate in the arrest of WILLIAMS. The facts herein are based upon a review of reports written by law enforcement officers during this investigation and my conversations with them. In submitting this affidavit, I have not included every fact known to me about the investigation, but only those facts which I believe are sufficient to establish probable cause.

4. On September 28, 2014, at approximately 2:50 a.m., Officers Craig Jones and Kelvin Ervin of the Boston Police Department were parked near the Moon Villa restaurant in downtown Boston, the scene of a recent shooting. The officers were approached by a Boston Cab company driver (hereinafter, the "driver"). The driver advised the officers that he saw three men in a bathroom with a firearm (the driver never mentioned the restaurant). The driver then provided the officers with a physical description of the three men - black men, one wearing a tan shirt, one wearing a green shirt, one wearing a dark-colored sweatshirt. He also said they were heading through the Chinatown Gateway Park toward Beach Street.

5. Officers Jones and Ervin drove to Beach Street. They observed a group of approximately five to seven black males standing opposite the Golden Gate restaurant. As the officers got out of their cruiser, three men made eye contact, turned, and immediately began to walk away from the officers. Two of the men were wearing tan-colored t-shirts. A third man, later identified as WILLIAMS, was wearing a black hooded sweatshirt. The officers followed all three men through Gateway Park.

6. Officer Jones called for the men to stop to speak to them. Both men in tan t-shirts stopped. WILLIAMS, in the black hooded sweatshirt, continued to walk away from the officers. When Officers Jones and Ervin ordered WILLIAMS to stop, WILLIAMS

2

ran. Officer Ervin, joined by two MBTA police officers (Seth Parker and Jon Erickson), pursued WILLIAMS down Edinboro Street onto Avenue de Lafayette. Officer Ervin never lost sight of WILLIAMS prior to arresting him. As the officers chased WILLIAMS, he discarded the sweatshirt (later recovered by at the intersection of de Lafayette and Essex Street). Officers saw WILLIAMS repeatedly reach toward his waistband and then discard an object. When the object landed, the officers heard the sound of metal on cement and believed the sound was consistent with that of a discarded firearm.

7.  Officer Parker looked in the area where the officers saw the object land, saw a firearm, and shouted, "Gun!" He remained with the firearm, leaving it in place. Officer Ervin and other officers apprehended WILLIAMS a short distance away, outside 105 Chancy Street in Boston and placed him under arrest.

8.  Officers photographed the firearm in place, where WILLIAMS had discarded it. WILLIAMS' firearm was a black Smith and Wesson Bodyguard .380 caliber semi-automatic handgun with an obliterated serial number, containing six rounds of .380 caliber ammunition. WILLIAMS' gun contained three different types of .380 caliber ammunition: one round of Remington Peter .380 caliber ammunition, two rounds of Hornady FTX Critical Defense Cartridge .380 caliber ammunition, and three rounds of Giulio

Fiocchi .380 caliber ammunition (marked with a head stamp "GFL").

9. Officer Gary Lewis, a firearms examiner with the Boston Police Department, visually inspected the ammunition seized from WILLIAMS' gun and determined that it was in fact ammunition. Further, based on my training and experience and my conversation with ATF Special Agent Phillip Ball, an interstate nexus expert, I know that the ammunition in WILLIAMS' gun was manufactured outside the Commonwealth of Massachusetts. As such, the ammunition traveled in and affected interstate commerce before September 28, 2014. I am continuing to investigate the origin of the firearm recovered from WILLIAMS.

10. I have reviewed WILLIAMS' Massachusetts Board of Probation record and determined that, prior to September 28, 2014, WILLIAMS had one or more convictions for crimes punishable for a prison term exceeding one year.

I, JOSEPH STEELE, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

Signed under the pains and penalties of perjury this 9th day of January, 2015.

```
_____
JOSEPH STEELE
Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives
```

Sworn to and subscribed before me this 9th day of January, 2015.

```
_____
THE HONORABLE JENNIFER C. BOAL
Chief United States Magistrate Judge
District of Massachusetts
```